UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**DAMON JAMES WILSON**, for himself
and on behalf of all others similarly situated,

*Plaintiff*,

V.

**THE STATE OF TEXAS**;

No. 1:21-cv-943

**GREG ABBOTT**, in his Official Capacity
as Governor of the State of Texas;

**DADE PHELAN**, in his Official Capacity
as Speaker of the Texas House of Representatives;

**DAN PATRICK**, in his Official Capacity
as Lieutenant Governor and Presiding Officer
Of the Texas Senate; and,

**JOSE A. ESPARZA**, in his Official Capacity
as Acting Texas Secretary of State;

*Defendants*

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND

## INJUNCTIVE RELIEF, REQUEST FOR DESIGNATION

## OF THREE-JUDGE COURT, AND REQUEST FOR

## CERTIFICATION OF CLASS ACTION

TO THE HONORABLE OF SAID COURT:

COMES NOW Damon James Wilson, Plaintiff in the above captioned and

numbered cause and, pursuant to Article I, Section 2 of the U.S. Constitution; Section 2

of the Fourteenth Amendment to the U.S. Constitution; the Equal Protection Clause of

the Fourteenth Amendment to the U.S. Constitution; 28 U.S.C. Sections 2201, 2202 and

2284; 42 U.S.C. Sections 1983 and 1988; and, Rule 23 of the Federal Rules of Civil Procedure; files this *Original Complaint for Declaratory and Injunctive Relief, Request for Designation of Three-Judge Court, and Request for Certification of Class Action*, and in this connection would respectfully show unto the Court as follows:

**I.**

**JURISDICTION**

The Plaintiff's complaint raises questions arising under the United States Constitution and federal law, and this Court has "federal question" jurisdiction pursuant to 28 U.S.C. §1331. Additionally, the Plaintiff's complaint challenges the constitutionality of the apportionment of congressional districts enacted by the Third Called Session of the 87th Texas Legislature on October 18, 2021, which has been designated as Senate Bill 6 ("Plan C2193"), so this Court possesses jurisdiction on that basis as well pursuant to 42 U.S.C. §1983, 28 U.S.C. §1343(a) and §2284(a).

**II.**

**REQUEST FOR DESIGNATION OF THREE-JUDGE PANEL**

The Plaintiff requests designation of a three-judge panel in this case pursuant to 28 U.S.C. §2284(a).

**III.**

**PARTIES**

**(1)**

Plaintiff Damon James Wilson ("**Plaintiff Wilson**") resides in the 1400 block of Independence Trail, in the City of Grand Prairie, Dallas County, Texas. On "Census Day" (as designated by federal law, April 1, 2020), Plaintiff was an inmate confined by

the Defendant State of Texas in the William P. Clements Unit of the Correctional Institutional Division of the Texas Department of Criminal Justice, and Plaintiff has been assigned "TDCJ" No. 01865939 by the State of Texas. The Clements Unit is located at 9601 Spur 591, in the City of Amarillo, Potter County, Texas. The Plaintiff is currently being confined by Defendant State of Texas in the Jester III Unit of the Correctional Institutional Division of the Texas Department of Criminal Justice which is located at 3 Jester Rd., in the City of Richmond, Fort Bend County, Texas. Since he commenced serving the current term of his institutional confinement, Plaintiff has continuously maintained an intention to return to his permanent residence in the City of Grand Prairie, Dallas County, Texas, for the purpose of continuing his domicile there unabated.

**(2)**

Defendant Greg Abbott ("**Defendant Abbott**") is the duly elected Governor of Texas, and is the Chief Executive Officer of the State of Texas under Article IV, Section 1, of the Constitution of the State of Texas. Pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure, and in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code, Plaintiff intends to provide Defendant Abbott with legal notice of this suit by service of summons on the Texas Secretary of State, on Defendant Abbott's behalf, *via* U.S. certified mail, with return receipt requested. In the alternative, Plaintiff may serve Defendant Abbott with legal notice of this suit by service of summons on Kevin Morehead, Assistant General Counsel for the Governor of Texas, as Mr. Morehead is designated by law to accept service of process on behalf of Defendant Abbott in his official capacity as Governor of the State of Texas.

**(3)**

Defendant Dade Phelan ("**Defendant Phelan**") is the duly elected Speaker and Presiding Officer of the Texas House of Representatives under Article III, Section 9 (b), of the Constitution of the State of Texas. Pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure, and in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code, Plaintiff intends to provide Defendant Phelan with legal notice of this suit by service of summons on the Texas Secretary of State, on Defendant Phelan's behalf, *via* U.S. certified mail, with return receipt requested.

**(4)**

Defendant Dan Patrick ("**Defendant Patrick**") is the duly elected Lieutenant Governor of Texas, and is the Presiding Officer of the Texas Senate under Article IV, Section 16, of the Constitution of the State of Texas. Pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure, and in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code, Plaintiff intends to provide Defendant Patrick with legal notice of this suit by service of summons on the Texas Secretary of State, on Defendant Patrick's behalf, *via* U.S. certified mail, with return receipt requested.

**(5)**

Defendant Jose A. Esparza ("**Defendant Esparza**") is the acting Secretary of State of the State of Texas, is an Executive Officer of the State of Texas under Article IV, Section 1, is appointed by the Governor of Texas by and with the advice of the Texas Senate under Article IV, Section 21, of the Constitution of the State of Texas, and is the Chief Election Officer for the State of Texas. Pursuant to Rule 4 (e)(1) of the Federal

Rules of Civil Procedure, and in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code, Plaintiff intends to provide Defendant Esparza with legal notice of this suit by service of summons on the Office of the Texas Secretary of State, on Defendant Esparza's behalf, *via* U.S. certified mail, with return receipt requested.

**V.**

**FACTS**

**(1)**

On February 8, 2018, the U.S. Department of Commerce (through the U.S. Census Bureau) published a final rule whereby, for purposes of apportionment of U.S. Representatives among the several States, it concluded it would classify inmates who are confined in correctional facilities as "residents" and "inhabitants" of their respective correctional facilities. When reaching this decision the Department of Commerce expressly declined to classify these inmates as persons domiciled at locations where they had resided prior to their confinement and at which they continued to maintained their domiciles on "Census Day" (April 1, 2020). As stated by the U.S. Census Bureau ("Bureau") when explaining this decision:

> "The practice of counting prisoners at the correctional facility is consistent with the concept of usual residence, as established by the Census Act of 1790…. '[U]usual residence' is defined as the place where a person lives and sleeps most of the time, which is not always the same as their legal residence, voting residence, or where they prefer to be counted. Therefore, counting prisoners anywhere other than the facility would be less consistent with the concept of usual residence, since the majority of people in prisons live and sleep most of the time at the prison."

**(2)**

In January of 2021, the Bureau created a "Census Geocoder" computer program designed for use with 2020 census data and intended for the expressed purpose of allowing "[o]fficial state redistricting liaisons and technical staff to use the Census Geocoder" to locate "the census geography associated with a specific address." The "Census Geocoder" program is designed to allow state officials to "reallocate group quarters populations" (including persons confined in prison) to support valid congressional redistricting. Upon release of the final census for 2020 by the Bureau on August 12, 2021, the Bureau confirmed the Census Geocoder enabled states to reallocate where prison inmates were deemed inhabitants within a state for purposes of congressional redistricting and the election of Texas' Representatives in the United States House of Representatives.

**(3)**

Upon arrival at a Texas prison unit all inmates are required to provide the true location of where they resided before being confined; and the Defendants, through their agents, have consistently followed this official practice before, on, and after, April 1, 2020. The Plaintiff provided to the State of Texas the true location of where he permanently resided before being confined, both before and at the time of the current term of his institutional confinement. The Plaintiff was (and is) an inhabitant and permanent resident of a location other than where he was confined on April 1, 2020; and the location where he is an inhabitant and permanent resident, which is not the location where he was confined on April 1, 2020, remains and at all times relevant to this proceeding has remained his permanent residence and domicile.

**(4)**

On October 18, 2021, the Third Called Session of the 87th Texas Legislature adopted "Plan C2193" which, on the basis of population data provided by the Bureau, assigned Plaintiff the status of a person residing in, and an "inhabitant" of, Texas Congressional District 13 ("CD13"). As devised by Plan C2193, CD13 encompasses the location where Plaintiff was confined on Census Day (April 1, 2020), but it does not encompass the location of his permanent domicile where he is and was an inhabitant on April 1, 2020. Under applicable federal constitutional law Plaintiff is domiciled in, and is an "inhabitant" and permanent resident of, Texas Congressional District 30 ("CD30") as devised by Plan C2193.

**(5)**

The Plaintiff presently intends, and did intend on April 1, 2020, to return to and permanently reside at the location where he was an inhabitant on April 1, 2020, and where he maintained a residence and domicile prior to his current term of confinement, in the City of Grand Prairie, Texas. The Plaintiff has never had the intention of establishing a permanent residence or domicile at the prison unit wherein he was confined on April 1, 2020, or at any other prison. The Plaintiff will be discharged from his current sentence to confinement by Defendants not later than February 1, 2031.

**(6)**

Notwithstanding the ready accessibility of the "Census Geocoder" program provided to Defendant State of Texas by the Bureau, the Defendant State of Texas has deliberately assigned Plaintiff to a congressional district within which it knew Plaintiff does not (and did not on April 1, 2020) permanently reside or have a domicile.

Application of this policy by the Defendant State of Texas, which essentially operates as a "legal fiction" that Plaintiff permanently resides at a location other than where he is an "inhabitant" and has established and maintained his domicile, has adversely affected (and will adversely affect) the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress. Furthermore, application of the State of Texas' legal fiction, as described above, has adversely affected (and will adversely affect) the federal representational interests shared by Plaintiff with the local community in which he is an actual inhabitant. Application of this policy by the Defendant State of Texas has thus caused (and will cause) "representational harm" to Plaintiff without the Court's intervention.

**(7)**

The Framers of Article I, §2 of the U.S. Constitution; the Framers of § 2 of the Fourteenth Amendment to the U.S. Constitution; the Framers of the Equal Protection Clause of the Fourteenth Amendment; and the first Congress that enacted of the U.S. Census Act of 1790; all understood the words "usual place of abode," "inhabitant" and "usual residence" to be qualified by what has been known since antiquity as the "*animo manendi*" doctrine (which John Adams referred to as the "*animus habitandi*" doctrine in November of 1784).

**(8)**

Since ancient times, and continuing through the adoption and ratification of Article I, §2 of the U.S. Constitution; and the adoption and ratification of § 2 of the Fourteenth Amendment to the U.S. Constitution; and the adoption and ratification of the Equal Protection Clause of the Fourteenth Amendment; and at the time of the enactment

of the U.S. Census Act by the first Congress in 1790; the "*animo manendi*" doctrine, as it would apply to "prisoners," was settled law in the United States. This doctrine has consistently provided since antiquity, as it does now, that a "prisoner" who is involuntarily confined for a term less than life is not deemed an "inhabitant" of the location where he is confined, but is instead an "inhabitant" of the location where he was domiciled prior to his confinement.

**(9)**

The "*animo manendi*" doctrine, as it would apply to "prisoners," expressed the consensus of all legal writers whose works were published prior to 1787. Furthermore, no legal authority published since 1787 has questioned application of the "*animo manendi*" doctrine with regard to a determination of the residence, "habitation" or domicile of prisoners; and this doctrine, as settled law, has continued to be consistently applied in the United States through adoption and ratification of the Fourteenth Amendment and thereafter.

**(10)**

The consensus among all legal authorities, concerning the "*animo manendi*" doctrine and determination of the residence or domicile of prisoners, is plainly illustrated by the writings of numerous highly regarded legal authorities. These legal authorities include Domitius Ulpianus, Flavius Petrus Sabbatius Iustinianus, Johannis Voet, Jean Domat, Jean-Batiste Denisart, Jean-Jacques Burlamaqui, Emerich de Vattel, Philippe-Antione Merlin, Joseph Story and James Kent. With the exception of the latter two legal authorities (Joseph Story and James Kent), the Framers of Article I, §2 of the U.S. Constitution, and the Congress that enacted the U.S. Census Act of 1790, would have

been (or were) personally familiar with some if not all of these legal authorities in 1787. Neither the Framers of the constitutional provisions cited above, nor the Members of the first Congress that enacted the U.S. Census Act of 1790, intended "prisoners"  confined for a term less than life to be deemed "inhabitants" of the location where they were confined for purposes of enumeration and allocation of representation in the U.S. House of Representatives. Rather, the Framers intended the words "usual place of abode," "inhabitant" and "usual residence" to be qualified by the *animo manendi* doctrine.

**(11)**

Although the Director of the U.S. Census Bureau seems to be unfamiliar with the "*animo manendi*" doctrine and the Framers' intentions related to that doctrine, in this suit Plaintiff brings no claim in this complaint against the United States, the U.S. Department of Commerce, or against any other federal agency of the United States government. However, Plaintiff does present claims against the State of Texas by his inclusion of the named Defendants (Abbott, Phelan, Patrick and Esparza) as parties to this suit in their official capacities.

**VI.**

**PLAINTIFF' LEGAL CLAIMS**

**(1)**

Federal statutory law requires the State of Texas to enact new congressional districts each decennial following its receipt of the certified apportionment of U.S. Representative provided by the Clerk of the U.S. House of Representatives, along with its receipt of population data provided by the Bureau.

**(2)**

In the present case Plaintiff contends the Defendant State of Texas' "legal fiction," as described above and as applied to him for the purpose of congressional redistricting after the 2020 decennial census, violates his constitutional right to "equal representation" as guaranteed by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution. The Plaintiff also contends the Defendant State of Texas' legal fiction violates his constitutional right to Equal Protection of the Law under the Fourteenth Amendment.

**(3)**

The Framers of Article I, §2 of the U.S. Constitution, the Framers of the U.S. Census Act of 1790, the Framers of § 2 of the Fourteenth Amendment to the U.S. Constitution, and the Framers of the Equal Protection Clause of the Fourteenth Amendment, all intended the words "usual place of abode," "inhabitant" and "usual residence" to be qualified by the "*animo manendi*" doctrine. In accordance with that doctrine, the Framers of those constitutional provisions, and the Congress that enacted the U.S. Census Act of 1790, did not intend a person confined in prison for a term of confinement less than life to be deemed, merely on the basis of the person's confinement alone, to have established a "residence," an "abode" or a "domicile," at the location of the person's confinement for purposes of congressional representation.

**(4)**

Article I, §2 of the U.S. Constitution, § 2 of the Fourteenth Amendment to the U.S. Constitution, and the Equal Protection Clause of the Fourteenth Amendment, each require states, including Defendant State of Texas, to make "a good-faith effort" to

provide "as "nearly as practical" equal representation to all persons enumerated in a federal decennial census regardless of whether the persons are legally qualified to vote under state law. These constitutional requirements condemn state congressional redistricting plans that provide unequal representation in the U.S. House of Representatives unless departures from equal representation "as nearly as practical" are shown to have resulted despite such a "good faith effort" by a state, and the state must justify each variance from equal representation "no matter how small."

**(5)**

The Plaintiff submits the Defendant State of Texas cannot constitutionally justify application of its legal fiction, as described herein, because it cannot satisfy the "as nearly as practicable" and "good faith effort" requirements that are applicable to the Plaintiff' claims. Here, there is no uncertainty concerning where Plaintiff was an "inhabitant" on April 1, 2020, within the meaning of the aforementioned constitutional provisions; and the Defendant State of Texas cannot persuasively assert it was "impractical" for it to utilize that knowledge or acquire that information, if necessary, pertaining to Plaintiff's permanent residence or domicile on Census Day (April 1, 2020). In other words, due to the Defendant State of Texas' knowledge of where Plaintiff last permanently resided before his current term of incarceration, and due to Defendant State of Texas' ready access to the "Census Geocoder" program that would easily have allowed it to place Plaintiff within the congressional district of his permanent domicile and where he is was an "inhabitant" on Census Day (April 1, 2020), the State of Texas cannot satisfy the aforementioned constitutional test.

**(6)**

When treating Plaintiff differently from others by declaring him for federal representational purposes as an inhabitant of where he was confined on April 1, 2020, rather than recognizing him as an inhabitant of the location where he had established and continued to maintain a permanent residence in the City of Grand Prairie, Texas both before, on and after April 1, 2020, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment. In this regard, other persons, including military personnel, have not been subjected to this legal fiction which has been applied to Plaintiff by Defendants, but they have instead been treated by Defendants as inhabitants and permanent residents in accordance with the *animo manendi* doctrine.

**(7)**

No assertion by Defendants that Plaintiff has failed to "exhaust" his "administrative remedies" before filing this suit would have merit. Under Texas law inmates confined in a state prison may seek "administrative remedies" through a "grievance" process. The substantive and procedural rules that govern Texas' inmate grievance process are contained in Texas' "Offender Grievance Operations Manuel" (last revised Jan. 2011)("OGOM").

**(8)**

While under the OGOM prison officials employed by the Defendant State of Texas are ethically bound to "[u]phold all federal, state and local laws, and adhere to the agency's policies, procedures, rules and regulations," the OGOM has repeatedly informed (and continues to inform) Texas' prison inmates that their challenges to "[s]tate and federal court decisions, laws, and regulations" are "Non-Grievable Issues." Thus,

because Texas' congressional redistricting plan constitutes a "state law" that is "non-grievable," and because there is no "administrative remedy" that is "available" to Plaintiff on that basis within the meaning of 42 U.S.C. §1997e (a), no legal obstacle to the District Court's jurisdiction is presented in this case.

**VII.**

**REQUEST FOR CERTIFICATION OF CLASS ACTION**

**(1)**

This action is brought by Plaintiffs as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). The Plaintiff hereby moves the Court, either before or after designation of a Three-Judge Panel, to certify this case as a class action pursuant to Rule 23.

**(2)**

In this suit Plaintiff seeks a declaratory judgment and a permanent injunction predicated on claims that his federal constitutional right to equal representation in the U.S. House of Representatives has been violated by the Defendants' legal fiction that has unconstitutionally designated him as an "inhabitant" of a location at which he was confined on April 1, 2020, rather than where he was, as a constitutional matter, an "inhabitant" on that date. In this suit Plaintiff does not seek compensatory damages.

**(3)**

The class to be represented by Plaintiff in this action, and of which Plaintiff is himself a member, consists of all inmates: a) who are involuntarily confined by the Defendant State of Texas in its prisons for a term of confinement less than life; b) who

have been designated by Defendants for purposes of federal representation in the U.S. House of Representatives as "inhabitants" of the location where they were confined on April 1, 2020; and, c) who have not been designated by Defendants as inhabitants, for congressional representational purposes, at the location of the domiciles that they maintained immediately prior to their terms of confinement, to which they intend to return after release from confinement.

**(4)**

The exact number of members of the class, as identified and described, is not known, but it is estimated that there are not less than 50,000 members. The class is so numerous that joinder of individual members is impracticable.

**(5)**

As disclosed by federal litigation commenced in Texas after the 2010 decennial census, the State of Texas in 2011, as it has in the present case, unconstitutionally moved the location of inmate-residences from where they were domiciled, to locations at which they were confined on "Census Day" (April 1, 2020). As a result, and as was shown by uncontroverted evidence in the record of that litigation, under Texas' former congressional redistricting plan (Plan C185, as enacted in 2011) inmates domiciled in the densely populated urban areas of Dallas and Harris Counties were displaced by the State of Texas' decision to draw electoral districts that did not recognize 49,437 inmates to be "inhabitants" of those two counties alone. *Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.), *Plaintiff's Response in Opposition to State's Motion to Dismiss*, 6-7, and Exhibits 7 and 8 (State's Written Admissions)(filed Aug. 23, 2011)(ECM Dkt.# 226, 226-7, and 226-8 Although more than a decade has elapsed since the decennial census of

2010, these figures support Plaintiff's estimation that the class certified in the present case would consist of not less than 50,000 members.

**(6)**

There are common questions of law and fact in this action that relate to, and affect, the rights of each member of the class; and the relief sought by Plaintiff is common to the entire class. Namely, the common questions of law involve whether the federal constitutional rights of the class members to equal representation in the U.S. Congress have been violated by the Defendants' allocation of class members to a location at which they were confined on April 1, 2020, rather than where they are inhabitants.

**(7)**

The claims of Plaintiff, who is representative of the class, are typical of the claims of the class, in that the claims of all members of the class, including Plaintiff, depend on a showing of the acts and omissions of Defendants giving rise to the constitutional rights of Plaintiff to the relief sought. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief set forth in this complaint.

**(8)**

This action should be certified as a class action, for the reason that the prosecution of separate actions by individual members of the class would create a risk of varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants, all of whom oppose the interests of the class.

**(9)**

This action would be properly maintained as a class action, in that the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications. Additionally, separate actions by individual members of the class would substantially impair or impede the ability of class members to protect their respective interests.

**(10)**

This action would be properly maintained as a class action inasmuch as the Defendants, all of whom oppose the class, have acted or refused to act, as more specifically alleged in this complaint on grounds which are applicable to the class, and have by reason of such conduct made appropriate final injunctive relief and corresponding declaratory relief with respect to the entire class, as sought in this action.

**(11)**

The Plaintiff, as the representative party for the class, is able to, and will, fairly and adequately protect the interests of the class. The Attorney-in-Charge for the Plaintiff in the present case, Richard Gladden, is experienced with complex federal litigation and has shown himself capable of providing excellent representation in numerous cases before this Court, as well as before other federal courts including the U. S. Supreme Court, particularly in area of litigation arising under 42 U.S.C. §1983. With regard to litigation involving the right to federal representation in the U.S. Congress, Mr. Gladden served as Attorney-in-Charge for plaintiffs Walter Session, Frenchie Henderson, and

others (the "Cherokee County Plaintiffs"), arising from the State of Texas' re-redistricting of its congressional districts in 2003. *Session v. Perry*, 298 F. Supp. 2d 451 (E.D. Tex. 2004), *on remand sub. nom.*, *Henderson v. Perry*, 399 F. Supp. 756 (E. D. Tex. 2005). The nature of the federal constitutional claim presented by Mr. Gladden on behalf of the plaintiffs in *Session v. Perry*, *supra,* was the subject of a subsequently published law review article, Gladden, *The Federal Constitutional Prohibition Against "Mid-Decade" Congressional Redistricting: Its State Constitutional Origins, Subsequent Development, and Tenuous Future*, 37 Rutgers L.J. 1133 (2005-2006). Should he be appointed as Attorney-in-Charge for the class in the present case, Mr. Gladden would actively conduct and be directly responsible for the litigation. For these reasons, Plaintiff moves the Court to appoint Mr. Gladden as class counsel pursuant to Rule 23(g).

### RELIEF REQUESTED

In light of the foregoing facts and claims, the Plaintiff moves the Court to:

a) Immediately notify the Chief Circuit Judge of the United States Court of Appeals for the Fifth Circuit of Plaintiff's request for the designation of a Three-Judge Panel to hear this case pursuant to 28 U.S.C.§2284(b)(1); and, after notice to and designation of a Three-Judge Panel by the Chief Circuit Judge of the United States Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C.§2284(b)(1),

b) Certify this case as a class action pursuant to Rule 23;

c)  Set an early hearing on any pretrial motion for relief filed by Plaintiff, including but not limited to a motion for summary judgment;

d) Set an early date for a trial on the merits of this case, if a trial be necessary; and, after full consideration of the merits of Plaintiff's claims at trial,

e) Issue a declaratory judgment, pursuant to 28 U.S.C. §2201, which declares Plan C2193, as applied to Plaintiff and to others similarly situated, to be in violation of Article I, §2 of the U.S. Constitution, § 2 of the Fourteenth Amendment to the U.S. Constitution, and the Equal Protection Clause of the Fourteenth Amendment;

f) Issue a permanent injunction, pursuant to 28 U.S.C. §2202, prohibiting the Defendants, their agents, successors, assigns, or anyone acting in concert with them, from engaging in any actions for the purpose electing, at any primary or general election, any person to serve as a Member of the United States House of Representatives from the State of Texas under Plan C2193;

g) Award the Plaintiff's counsel reasonable costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988, which are shown to be necessary to the prosecution of this matter; and

h) Grant such other and further relief to which the Plaintiff and others similarly situated may show themselves entitled.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that process will issue requiring all Defendants identified herein to appear and answer Plaintiff's Original Complaint; that the Court will certify this case as a class action as requested herein; that the Court will grant the relief requested by Plaintiff for himself and on behalf of others similarly situated; and that the Court will grant such further or additional relief to which Plaintiff and others similarly situated may show themselves entitled.

Respectfully submitted,

*/s/ Richard Gladden*
Texas Bar No. 07991330

1204 W. University Dr. Suite 307
Denton, Texas 76201
940.323.9300 (voice)
940.539.0093 (fax)
richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff*